**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 13-4069**

───────────────

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

DANIEL BLUE,

          Defendant - Appellant.

───────────────

**No. 15-4153**

───────────────

UNITED STATES OF AMERICA,

          Plaintiff - Appellee,

    v.

DANIEL BLUE,

          Defendant - Appellant.

───────────────

Appeals from the United States District Court for the District
of Maryland, at Baltimore.   Ellen L. Hollander, District Judge.
(1:11-cr-00508-ELH-1)

───────────────

Argued:  October 28, 2015          Decided:  December 10, 2015

───────────────

Before AGEE and WYNN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

───────────────

Reversed by published opinion.  Senior Judge Hamilton wrote the
opinion, in which Judge Agee and Judge Wynn joined.

————————————

**ARGUED:** Sapna Mirchandani, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Greenbelt, Maryland, for Appellant.  John Walter
Sippel, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.  **ON BRIEF:** James Wyda, Federal Public
Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore,
Maryland, for Appellant.  Rod J. Rosenstein, United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,
Maryland, for Appellee.

————————————

HAMILTON, Senior Circuit Judge:

On appeal, Daniel Blue (Blue) challenges the sufficiency of the evidence to support his convictions on a single count of possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting the same in violation of 18 U.S.C. § 2, and a single count of conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846. Blue also challenges the district court's denial of his motion for a new trial based upon newly discovered evidence.

Because we agree with Blue that the evidence is insufficient to support his two convictions, we reverse both convictions and do not reach Blue's challenge to the district court's denial of his new trial motion.

I

A.    June 29, 2011.

Following his June 29, 2011 arrest on heroin distribution and firearm charges in Baltimore, Maryland, Herbert Fenner (Fenner) agreed to cooperate with Detective William Bearde (Detective Bearde) and Sergeant Marinos Gialamas (Sergeant Gialamas) of the Baltimore City Police Department in their ongoing heroin trafficking investigation in the Baltimore

area.  As part of Fenner's cooperation efforts, he identified
Keith Townsend of 715 North Curley Street, Baltimore City, as a
middleman from whom he had purchased heroin on two separate
occasions earlier the same month (purchasing ten and twenty
grams respectively).    Armed   with   this   new   information,
Detective Bearde and Sergeant Gialamas set up a controlled
heroin buy targeting Townsend later the same day.

Sitting in a vehicle parked on the 800 block of North
Curley Street, Sergeant Gialamas and Fenner viewed the 700
block of North Curley Street without obstruction.  Sergeant
Gialamas sat in the front driver's seat, while Fenner sat in the
middle of the back seat leaning forward.  Detective Bearde sat
in the passenger front seat of the same vehicle, but his view of
the 700 block of North Curley Street was obstructed by another
vehicle parked directly in front of the undercover vehicle.
Then, following instructions, Fenner called Townsend on the
telephone and placed an order for fifty grams of heroin.
Townsend responded that he would be ready in about fifteen
minutes.

Several minutes later, Townsend walked out of his house and
interacted for less than a minute with the occupants of a
silver Lexus sport utility vehicle double parked on the 700
block of North Curley Street.  During their interactions, which
included verbal communication, Townsend pulled his wallet out of

- 4 -

his front right pants pocket, opened it, removed some paper currency and handed it to the driver.  At one point, Townsend's hands were partially inside the window of the Lexus on the driver's side.  From their location on the 800 block of North Curley Street, Sergeant Gialamas and Fenner did not see anything pass back to Townsend from any occupant of the Lexus.

Next, Townsend walked toward the corner of East Madison Street and North Curley Street where he met with Blue for approximately two minutes.  At the start of the meeting, Blue had "a brownish-tannish item protruding from his left hand" in a semi-closed fist.  (J.A. 407).  Blue and Townsend then both raised their left hands toward each other and lowered them back down.  When Townsend lowered his left hand, he was holding an item, which he promptly placed in his left front pants pocket. When Blue lowered his left hand, it was empty.

Townsend then walked toward his residence at 715 North Curley Street, while Blue headed in the opposite direction, entered a gold Honda Accord, and drove away.  While walking, Townsend telephoned Fenner and told him that he was ready. Townsend also asked Fenner's location.  As Townsend was about to enter his residence, an arrest team stopped him, placed him under arrest, and searched him incident to such arrest.  One of the arresting officers found a plastic bag containing a folded over slice of bread in Townsend's front left pants pocket.  The

folded slice of bread concealed a plastic bag containing 49.87 grams of heroin.  A Baltimore City Police Department pole video camera captured the meeting between Townsend and Blue on video tape.

B.   July 13, 2011.

Fast forward two weeks to July 13, 2011.  Detective James McShane (Detective McShane) of the Baltimore City Police Department witnessed Blue enter the Baltimore City District Courthouse of the District Court of Maryland, located at 1400 East North Avenue, Baltimore.  Detective McShane had previously learned that Blue had a scheduled court proceeding that day. While Blue was in the courthouse, an officer with the Baltimore City Police Department hid a global positioning system (GPS) tracking device on Blue's vehicle parked nearby.  When Blue later exited the courthouse and entered his vehicle along with a male passenger, Detective McShane, driving an unmarked vehicle, began to follow Blue.  So did Detective Bearde and another officer, each driving separately in unmarked vehicles.

For approximately twenty minutes Blue and his passenger traveled northbound at a normal rate of speed past Lake Montebello until he pulled into the parking lot of the Fox Hall apartment complex on Rosecrans Place in Nottingham, Maryland, which is still in Baltimore County.  The Fox Hall apartment complex consists of multiple apartment buildings, each containing

numerous individual apartments.  Only Blue exited his vehicle once parked.  Blue then entered apartment building number seven empty-handed and exited no more than five minutes later holding a sandwich-sized, cloudy white, plastic container in his hand. Blue then entered his vehicle and drove away.

Due to the configuration of apartment building number seven, the surveilling officers could not see whether Blue entered any apartment in apartment building number seven. Rather, the surveilling officers saw Blue enter the front door of apartment building number seven, go up a couple of steps, and then disappear.

Detective McShane, Detective Bearde, and the third officer took turns following Blue's vehicle back to Lake Montebello in Baltimore City and kept him under surveillance.  Lake Montebello is a recreational area known for narcotics transactions.  Blue parked and exited his vehicle with only his mobile phone in his hand.  The same male passenger remained in Blue's vehicle.  As Blue walked across a playground, he approached an individual later identified as Jamar Holt (Holt).  Blue and Holt then walked toward a Jeep Cherokee vehicle.  Blue got into the passenger side, Holt got into the driver's side, and Holt drove them around Lake Montebello.  A minute or two later, Holt stopped the vehicle at the entrance to Lake Montebello, Blue exited the vehicle, and Holt drove away.

Detective McShane, Detective Bearde, and the third officer followed Holt in their respective unmarked vehicles because they suspected that Holt and Blue had just engaged in an illegal narcotics transaction.  A short time later, the three officers conducted a traffic stop of Holt's vehicle after he ran a stop sign.  Detective McShane approached Holt's vehicle from the front and ordered him to show his hands.  The encounter immediately escalated to Holt pointing a handgun at Detective McShane and then attempting to run him over.  Detective McShane and the third officer discharged their weapons in the direction of Holt.  Holt exited the scene unharmed at a high rate of speed.  Although the officers gave chase by vehicle, Holt quickly eluded them.  Holt's vehicle was located one hour later abandoned.  No firearms or illegal narcotics were found in it.

Later the same day, the GPS tracking device on Blue's vehicle revealed its whereabouts to be on the 4900 block of Sinclair Lane, Baltimore City.  Detective Bearde, among other officers, began surveilling the area.  When Detective Bearde observed Blue exit the residence located at 4913 Sinclair Lane and approach Blue's vehicle, Detective Bearde alerted the arrest team, which moved in to arrest Blue based upon Blue's meeting with Townsend on June 29, 2011.

After Detective Bearde read Blue his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), Blue acknowledged his

understanding of those rights and indicated that he wanted to cooperate nonetheless. During his interview with Detective Bearde, Blue falsely denied exiting the residence at 4913 Sinclair Lane earlier that day and falsely denied leaving Baltimore City earlier that day. When informed that he had been under surveillance earlier that day and had been seen entering building number seven of the Fox Hall apartment complex on Rosecrans Place, which location is outside of Baltimore City, Blue hung his head. When asked about meeting with Holt earlier that day, Blue admitted that he had met with Holt to discuss a drug transaction that was to take place later that afternoon. At this point, the interview ended.

During a search of Blue's person incident to his arrest, Detective Bearde recovered a set of keys. Investigative work revealed that one key of the set of keys unlocked the door of apartment 1-D in building number seven of the Fox Hall apartment complex on Rosecrans Place (the Apartment). After officers secured the Apartment, they obtained a search warrant to search it for evidence of narcotics trafficking. Execution of the search warrant uncovered 108.6 grams of heroin, two scales with heroin residue, and numerous empty plastic sandwich bags all hidden in a footstool in the front bedroom. In the same bedroom, officers found mail in the name of Tiffany Elliott and women's clothing. Tiffany Elliott's brother, Brandon Cooper,

was found sleeping in the back bedroom.  The dining room table held mail addressed to Brandon Cooper.  The search uncovered no evidence linking Blue to the Apartment, no evidence linking him to the contents of the footstool, and no evidence linking him to Tiffany Elliott or Brandon Cooper.

Law enforcement also obtained a search warrant for the residence at 4913 Sinclair Lane.  Execution of such warrant found nothing to incriminate Blue of a crime.

C.  Procedural History.

A federal grand jury sitting in the District of Maryland indicted Blue on three counts.  Count 1 alleged that, from in or about June 2011 through in or about July 2011, Blue conspired with Townsend and others to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin.  21 U.S.C. §§ 841(a)(1), 846.  Count 2 alleged that, on or about June 29, 2011, Blue possessed with intent to distribute a mixture or substance containing a detectable amount of heroin and aiding and abetting the same.  18 U.S.C. § 2; 21 U.S.C. § 841(a)(1). Count 3 alleged that, on or about July 13, 2011, Blue possessed with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin and aiding and abetting the same.  Id.

Citing <u>United States v. Jones</u>, 132 S. Ct. 945 (2012), Blue moved to suppress the evidence derived from the GPS tracking device placed upon his vehicle on July 13, 2011 (namely, his statements to Detective Bearde and the key to the Apartment). The government argued the good faith exception to the exclusionary rule applied because officers believed that the warrantless placement of the GPS tracking device on Blue's vehicle was lawful. The district court agreed with the government's argument and, therefore, denied Blue's motion to suppress.

Blue's jury trial spanned three days. In support of the government's prosecution of Blue at trial, the government presented the testimony of six witnesses and introduced the video surveillance tape of the June 29, 2011 meeting between Blue and Townsend. The government also relied upon the following three stipulations entered into between the government and Blue: (1) the heroin found on Townsend's person on June 29, 2011 weighs 49.87 grams; (2) the heroin found in the footstool in the front bedroom of the Apartment weighs 108.6 grams; and (3) no fingerprints were found on the clear plastic bag containing the 108.6 grams of heroin. Pursuant to Federal Rule of Criminal Procedure 29, Blue moved for judgment of acquittal on all counts at all appropriate times. Believing the government made a strong case against Blue with respect to Count

2, the district court outright denied the motion with respect to Count 2.  Believing Counts 1 and 3 to present close calls on Blue's sufficiency of the evidence challenges, the district court reserved ruling on the motion with respect to those counts and let them go to the jury.

Using a special verdict form, the jury convicted Blue on Counts 1 and 3, but acquitted him on Count 2.  Of relevance on appeal, with respect to Count 1, the special verdict form first asked whether the jury found Blue guilty or not guilty as to "**COUNT ONE** (conspiracy to distribute heroin)[.]"  (J.A. 788). It then stated that if the jury found Blue guilty as to Count 1, the jury needed to make a finding as to the amount of heroin involved with either "100 grams or more" or "Less than 100 grams" as the only two alternative options for an answer.  Id. Of relevance on appeal, with respect to Count 3, the special verdict form asked whether the jury found Blue guilty of "**COUNT THREE** (possession with intent to distribute heroin on July 13, 2011)[.]"  (J.A. 789).  It then stated that if the jury found Blue guilty as to Count 3, the jury needed to make a finding as to the amount of heroin involved with either "100 grams or more" or "Less than 100 grams" as the only two alternative options for an answer.  Id.

With respect to Counts 1 and 3, the district court upheld the jury's verdict in the face of Blue's motion for judgment of

acquittal, although the district court continued to believe
those counts presented close calls on the sufficiency of the
evidence.     In this regard, the district court was "readily
satisfied that the evidence proved the existence of a conspiracy
regarding heroin," but believed "whether the evidence was
sufficient to prove beyond a reasonable doubt a conspiracy to
distribute 100 grams or more of heroin" was "[t]he difficult
question . . ." (J.A. 828), giving Blue "a very good appellate
issue," (J.A. 870).

Following the entry of judgment in which the district court
sentenced Blue to 120 months' imprisonment, Blue filed a timely
notice of appeal challenging the denial of his motion to
suppress and the denial of his motion for judgment of acquittal.
Then, on October 3, 2014, while Blue's appeal was pending, he
moved for a new trial on Counts 1 and 3 based upon newly
discovered evidence.   See Fed. R. Crim. P. 33(a) (upon defense
motion, court may vacate judgment and grant new trial if
interest of justice so requires).    On October 31, 2014, we
granted Blue's unopposed motion to stay his appeal and remand
his case to the district court for consideration of his new
trial motion.   On remand, the district court denied the motion.
Blue noted a timely appeal of such denial.    We consolidated
Blue's appeal from his judgment of conviction with his appeal
from the denial of his new trial motion.

II

For analytical purposes, we first address Blue's sufficiency of the evidence challenge to his conviction on Count 3, alleging that, on or about July 13, 2011, Blue possessed with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin and aiding and abetting the same.  In this count, the 100 grams or more of heroin pertains to the 108.6 grams of heroin found in the footstool located in the front bedroom of the Apartment.

In reviewing the sufficiency of the evidence to support a conviction, our function is to determine, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government, whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt."  United States v. Burgos, 94 F.3d 849, 863 (4th Cir. 1996) (en banc) (internal quotation marks omitted).

Section 841(a) provides, in relevant part, that "it shall be unlawful for any person knowingly or intentionally——(1) to . . . possess with intent to . . . distribute . . . a controlled substance . . . ."  21 U.S.C. § 841(a)(1).  Section 841(b)(1)(B)(i) permits an enhanced sentence for an offense under § 841(a) involving "100 grams or more of a mixture or substance containing a detectable amount of heroin . . . ."  Id.

- 14 -

§ 841(b)(1)(B)(i).  Because the government prosecuted Blue under a constructive possession theory with respect to the heroin at issue in Count 3, the two critical issues at trial with respect to this count were:  (1) whether Blue knew the 108.6 grams of heroin was in the footstool in the front bedroom of the Apartment, and (2) whether Blue had the power to exercise dominion and control over such heroin.  See United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992) (constructive possession requires knowledge of contraband's presence and the exercise, or the power to exercise, dominion and control over it), overruled on other grounds by Burgos, 94 F.3d at 849; United States v. Schocket, 753 F.2d 336, 340 (4th Cir. 1985) ("A person has constructive possession of a narcotic if he knows of its presence and has the power to exercise dominion and control over it.").  Notably, dominion and control cannot be established by mere proximity to the contraband, by mere presence on the property where the contraband is found, or by mere association with the person who does control the contraband.  United States v. Brown, 3 F.3d 673, 680 (3d Cir. 1993); United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992).  Moreover, "[m]ere joint tenancy of a residence is insufficient to prescribe possession [of its contents] to all the occupants . . . ."  United States v. Morrison, 991 F.2d 112, 115 (4th Cir. 1993).  See also United States v. Wright, 739 F.3d 1160, 1168 (8th Cir.

- 15 -

2014) ("[W]hen there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession."). Rather, "[i]n joint occupancy cases, there must be some additional nexus linking the defendant to the contraband." Id.

Under these applicable legal parameters, the fact that Blue possessed a key to the Apartment, entered the apartment building containing the Apartment on July 13, 2011, stayed five minutes, and exited with a sandwich-sized plastic container in his hand, standing alone, is insufficient evidence to establish his constructive possession of the heroin found in the footstool in the front bedroom of the Apartment. The government concedes as much, but nonetheless contends that, based upon the cumulative facts presented during trial and the reasonable inferences to be drawn therefrom in favor of the government, the government proved beyond a reasonable doubt that Blue constructively possessed the 108.6 grams of heroin and other drug trafficking paraphernalia found in the footstool in the front bedroom of the Apartment. In this regard, the government points to the following evidence and/or inferences from the evidence:

> In Blue's case, police observed Blue participate in a 50-gram heroin transaction with Townsend. Approximately two weeks later, Blue drove past Lake Montebello to the Rosecrans Place apartment building and exited with a container in his hand. Blue then backtracked to Lake Montebello to discuss a drug transaction with Jamar Holt that was to take place later in the day. When detectives tried to stop Holt,

he brandished a firearm, inferring that he was
protecting and concealing something in his vehicle.
When Blue was arrested, he had [a] key to the
Rosecrans Place apartment, and lied about being at the
Rosecrans Place apartment in order to conceal the
large quantity of heroin and drug paraphernalia at the
apartment.

(government's Br. at 38). The government also argues that the

lack of any personal effects of Blue in the Apartment is

consistent with Blue using it as a stash house. In support, the

government points to the testimony of Drug Enforcement

Administration Special Agent Todd Edwards (Special Agent

Edwards), whom the district court qualified as an expert witness

in the manner and means of drug trafficking, that drug

traffickers sometimes utilize the homes of family members,

girlfriends, or close friends to stash their drugs so they have

ready access to their drugs, "[b]ut if law enforcement is

following them back to where they sleep, it's not there." (J.A.

602). With respect to case law, the government relies heavily

on the following statement set forth in a footnote in the Eighth

Circuit's Brett case: "[T]he holder of the key, be it to the

dwelling, vehicle or motel room in question, has constructive

possession of the contents therein." United States v. Brett,

872 F.2d 1365, 1369 n.3 (8th Cir. 1989).

In response to the government's position, Blue emphasizes

the government presented no evidence connecting him to Tiffany

Elliot or Brandon Cooper, no evidence of him ever being present

inside the Apartment, and no evidence he had ever been to the Fox Hall apartment complex more than the one time for five minutes. Under these circumstances, Blue argues the jury would have to engage in impermissible speculation to conclude that he knew about the heroin in the footstool in the front bedroom of the Apartment and had dominion and control over it.

We hold the evidence presented by the government at trial, viewed in the light most favorable to the government and drawing all reasonable inferences therefrom in the government's favor, is insufficient to prove beyond a reasonable doubt that Blue constructively possessed the 108.6 grams of heroin found hidden in the footstool in the front bedroom of the Apartment. As noted, the government did not attempt to prove constructive possession of the heroin by proving that Blue resided or leased the Apartment, or that any of his personal possessions were located within the Apartment. Nor did the government introduce any evidence supporting constructive possession of the heroin based on Blue's association with any of the occupants of the Apartment. The inference that Blue used the Apartment as a stash house that the government wants us to draw from the fact that no personal items belonging to Blue were found in the Apartment is an unreasonable one given the complete lack of evidence establishing any connection to any of the occupants of the Apartment. The expert witness testimony by Special Agent

Edwards upon which the government relies to support its stash-
house inference hinges on one of the occupants of the Apartment
being a family member, girlfriend, or a close friend of Blue.
But the government introduced no such evidence that Blue even
knew, let alone had any such close relationship with any of the
occupants of the Apartment.  As such, there was no evidence here
from which the jury could reasonably infer that the Apartment
was a stash house based on Special Agent Edwards' testimony
about their use.  Moreover, the fact that the sandwich-sized
plastic container Blue was seen carrying when he left apartment
building number seven of the Fox Hall apartment complex was
never seen again rendered its existence of dubious probative
value.  Additionally, the government presented no evidence of
any connection between the heroin seized from Townsend to the
heroin or other drug-trafficking paraphernalia found hidden in
the footstool in the front bedroom of the Apartment.

     At most, Blue was observed entering apartment building
number seven of the Fox Hall apartment complex on Rosecrans
Place empty-handed on July 13, 2011, leaving five minutes later
carrying a sandwich-sized plastic container never to be seen
again, immediately driving to meet someone with whom he
discussed a future drug transaction, and then, later the same
day, falsely denied to law enforcement officers that he had
entered building number seven earlier that day.  Besides the

key, the government presented no other evidence, direct or circumstantial, providing a nexus to the Apartment. There is no controlling precedent holding such little nexus between a defendant and contraband found in a dwelling of joint occupancy establishes constructive possession of the contraband and the government has not convinced us there should be. Cf. United States v. Cruz, 285 F.3d 692, 699 (8th Cir. 2002) (dominion and control over contraband hidden in another's house cannot be established by defendant's mere access to and presence in such house); Goldsmith v. Witkowski, 981 F.2d 697, 701-02 (4th Cir. 1992) (concluding insufficient evidence of constructive possession of drugs close by and in plain sight of defendant because record lacked evidence that defendant resided or frequented the premises, he had no apparent relationship with the tenant, he did not act suspiciously upon the police's entry, and there was no showing that he was alone with the drugs when police entered the apartment).

Seemingly recognizing the weakness of its case with respect to showing Blue constructively possessed the 108.6 grams of heroin found in the footstool in the front bedroom of the Apartment, the government wants us to rely upon Blue's false denial of having entered building number seven of the Fox Hall apartment complex earlier in the day to get it across the beyond-a-reasonable-doubt finish line. This piece of evidence

cannot bear the weight the government asks of it, however. To be sure, the jury was free to consider whether Blue's consciousness of guilt led him to lie to law enforcement about visiting building number seven of the Fox Hall apartment complex. Cf. United States v. Obi, 239 F.3d 662, 665 (4th Cir. 2001) ("It cannot be doubted that in appropriate circumstances, a consciousness of guilt may be deduced from evidence of flight and that a jury's finding of guilt may be supported by consciousness of guilt."). However, the inference of guilt in Blue's case was weakened by the fact that Blue also lied about being at the Sinclair residence earlier the same day where no contraband was found. Additionally, to infer Blue's constructive possession of the 108.6 grams of heroin found in the footstool in the front bedroom of the Apartment based upon his denial of visiting building number seven of the Fox Hall apartment complex earlier that day is too tenuous to be reasonable in light of the complete lack of evidence of his connection to any of the occupants in the Apartment.

The district court in the present case gave such deceptive behavior on Blue's part considerable importance, relying on United States v. Whitner, 219 F.3d 289 (3d Cir. 2000), to observe that "'suspicious and deceptive response to questioning leads to a reasonable inference that Whitner was attempting to conceal the existence of the apartment and [his] association

with the apartment.'"   (J.A. 875) (quoting Whitner, 219 F.3d at 299).  But Whitner addressed a motion to suppress and whether deceptive responses gave rise to probable cause to search the residence at issue.  Whitner, 219 F.3d at 299.  That analysis is not at issue here.  Here, Blue's deceptive responses helped supply probable cause to get the warrant to search the Apartment, but such standard only requires a fair probability on which reasonable and prudent persons act.  Florida v. Harris, 133 S. Ct. 1050, 1055 (2013).  See also Illinois v. Gates, 462 U.S. 213, 235 (1983) ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in [a probable cause] decision" because probable cause is "only the probability, and not a prima facie showing, of criminal activity." (internal quotation marks omitted)).  The question here is whether Blue's deceptive responses get the government past the beyond-a-reasonable-doubt finish line that Blue not only had knowledge of the presence of the 108.6 grams of heroin discovered in the footstool in the Apartment's front bedroom, but also that he had dominion and control over it at the time of its seizure.  We hold they do not.

We now turn to briefly address the government's reliance on the following statement in footnote 3 of the Eighth Circuit's Brett case: "[T]he holder of [a] key, be it to the dwelling,

vehicle or motel room in question, has constructive possession of the contents therein." Brett, 872 F.2d at 1369 n.3. The government's reliance is misplaced. First, no Fourth Circuit case has adopted this overly broad statement as the law of the Fourth Circuit. Second, the statement conflicts with our Fourth Circuit case law analyzing constructive possession where narcotics are discovered in a place where multiple persons reside. See Morrison, 991 F.2d at 115 (mere joint tenancy of residence is insufficient to prescribe possession of its contents to all occupants). Third, in United States v. Wright, 739 F.3d 1160, 1168 (8th Cir. 2014), the Eighth Circuit necessarily qualified its broadly worded statement in footnote 3 of Brett by rejecting the government's argument in Wright that the defendant's possession of a key to the home, by itself, proved he knowingly possessed cocaine found in the southeast bedroom of the home. In this regard, the Eighth Circuit cited its earlier decision in United States v. Wajda, 810 F.2d 754, 762 (8th Cir. 1987), for the proposition that "when there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession." Wright, 739 F.3d at 1168.

And lest there be any doubt about the Wright panel's qualification of the statement at issue in footnote 3 of Brett, Chief Judge Riley wrote a concurring opinion in Wright to make

- 23 -

clear that the government's reading of the Brett footnote "is
untenable" because whether the defendant had knowledge that the
drugs were in the dwelling was not at issue in Brett.  Id. at
1174.   Thus, Chief Judge Riley explained, "the Brett court's
reference to 'the holder of the key' related only to what was at
issue:   whether the government had proved the defendant's
dominion and control over the contraband."  Id.  Chief Judge
Riley then went on to explain that, "[o]n casual reading," some
Eighth Circuit "post-Brett cases might appear inconsistent with
Wajda, but a contextual reading of these cases' cursory
references to the Brett footnote demonstrate" that the Eighth
Circuit "has never allowed the government to convict an
individual for drugs he knew nothing about based solely upon his
possession of a duplicated key."  Wright, 739 F.3d at 1175 n.4.

In sum, because the government failed to present sufficient
evidence to sustain Blue's conviction on Count 3 for possession
with intent to distribute 100 grams or more of heroin on July
13, 2011, we reverse his conviction.


III

We now turn to address Blue's challenge to the sufficiency
of the evidence to support his conviction on Count 1, charging
him under 21 U.S.C. § 846 with conspiracy to distribute and
possess with intent to distribute 100 grams or more of a mixture

- 24 -

or substance containing a detectable amount of heroin from in or about June 2011 through in or about July 2011, in violation of 21 U.S.C. § 841(a)(1). Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

In reviewing the sufficiency of the evidence to support Blue's conspiracy conviction, our function is to determine, "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the Government, whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." Burgos, 94 F.3d at 863 (internal quotation marks omitted).

In the present case, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, such evidence fails to support a rational determination that Blue is guilty of conspiring to distribute and possess with intent to distribute at least 100 grams of heroin. The only way the government can reach the at-least-100-gram mark is by tying Blue and at least one other person to an agreement to distribute the 108.6 grams of heroin found in the footstool in the front bedroom of the Apartment. As we explained at length in Part II of this opinion, the

government failed to present sufficient evidence to prove beyond a reasonable doubt that Blue even knew about such heroin. Additionally, the government failed to present any evidence of what type of relationship, if any, Blue, Townsend, or Holt may have had with one or more of the Apartment's occupants. In other words, the jury had no evidence before it from which to draw a reasonable inference that Blue conspired with another to distribute or possess with intent to distribute 100 grams or more of heroin. Accordingly, we reverse Blue's conviction on Count 1.

One final issue——in a single footnote in its appellate brief in the present case, the government cites United States v. Hickman, 626 F.3d 756 (4th Cir. 2010), in support of its position that, in the event we find the evidence before the jury insufficient to sustain Blue's conviction for conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(i), we should instruct the district court to enter judgment on the lesser included offense of conspiracy to distribute and possess with intent to distribute less than 100 grams of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). We decline to do so because "[t]o do otherwise would be to usurp the jury's institutional function in the criminal

justice system——to determine the facts." <u>Thornton v. Texas</u>, 425 S.W.3d 289, 299 (Tex. Crim. App. 2014).

While we acknowledge that "it is within our power to direct entry of judgment on a lesser included offense when vacating a greater offense for insufficient evidence," <u>Hickman</u>, 626 F.3d at 770, "courts of appeals should limit the use of judgment reformation to those circumstances when what is sought is a conviction for a lesser offense whose commission can be established from facts that the jury actually found." <u>Thornton</u>, 425 S.W.3d at 298-99. Here, the evidence presented at trial was such that we cannot know the jury actually found Blue participated in the charged conspiracy apart from also finding the conspiracy involved the 100 grams or more of heroin found in the footstool and charged in Count 3.

By finding Blue entered into an agreement with at least one other person to distribute and possess with intent to distribute 100 grams or more of heroin, based upon the evidence presented at trial, the jury necessarily found the conspiracy involved the 108.6 grams of heroin found in the footstool in the front bedroom of the Apartment. Because the jury would have needed to go no further in its findings to convict Blue of Count 1, we cannot conclude with any assurance that the jury actually found Blue had conspired with another to distribute or possess with

intent to distribute any other heroin besides the 108.6 grams found in the footstool in the front bedroom of the Apartment.

Notably, from the evidence presented at trial in <u>Hickman</u>, in which case we vacated the defendant's conviction for conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin for lack of sufficient evidence and remanded the case to the district court with directions to enter judgment on the lesser included offense of conspiracy to distribute or possess with intent to distribute 100 grams or more of heroin, we <u>knew</u> the jury actually found the defendant participated in a conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin. Here, in material contrast, we do not know and cannot know whether the jury found Blue guilty beyond a reasonable doubt of every element of the lesser included offense. Accordingly, judgment reformation is inappropriate in the present case.


IV

In conclusion, we hold insufficient evidence supports Blue's convictions on Counts 1 and 3. Accordingly, we reverse both convictions.[*]

---

[*] We note that Blue initially challenged on appeal the district court's denial of his motion to suppress the evidence discovered as the result of the GPS tracking device placed on
(Continued)

REVERSED

───────────────────────

his vehicle.  He has since, however, withdrawn such challenge
because he agrees that our decision in United States v.
Stephens, 764 F.3d 327 (4th Cir. 2014), cert. denied, 136 S. Ct.
43 (2015), precludes relief on that issue in his case.

- 29 -